IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 3 0 2008

**CLERK, U.S. DISTRICT COURT**
By _____
Deputy

| | | |
|---|---|---|
| COVENANT CAPITAL PARTNERS, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:06-CV-0399-O |
| SOIL SAVERS, INC., *et al.*, | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

This action involves a securities fraud scheme. On March 3, 2006, Plaintiffs, Covenant Capital Partners and Covenant Capital Partners II, filed their original complaint against Defendants, Soil Savers, Inc., Larry T. Johnson, William ("Bill") W. Rippetoe, Robert G. Bishop, and Does 1-7, alleging violations of the Federal Securities Exchange Act of 1934, 15 U.S.C. §78j(b), Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5, the Texas Securities Act, TEX. REV. CIV. STAT. ANN. Art. 581-33, as well as claims for breach of contract, rescission, fraud, negligent misrepresentation, accounting, conversion, and injunctive relief. (Compl. at 23-38). All Defendants were served and answered. (Doc. Nos. 7, 8, 28).

Subsequently, Plaintiffs voluntarily moved to dismiss their claims against Robert G. Bishop, and the court granted their motion on December 1, 2006. Doc. No. 15 (3:06-CV-0399-N) (N.D. Tex. Dec. 1, 2006). Plaintiffs also moved to dismiss their claims against William W. Rippetoe and the Court entered an order dismissing Plaintiffs' claims against Rippetoe without prejudice. Doc. No. 91 (3:06-CV-0399-O) (N.D. Tex. Apr. 29, 2008). Based on these orders, only Plaintiffs claims against Defendants Soil Savers Inc. and Larry T. Johnson remained for

1

trial.[1]

With respect to Defendants Soil Savers Inc.[2] ("Soil Savers") and Larry T. Johnson ("Larry Johnson" or "Johnson"), their counsel of record moved to withdraw on November 20, 2006 based on the fact that he had been suspended from practice in the Tenth Circuit. Doc. No. 13 (3:06-CV-0399-N) (N.D. Tex. Nov. 20, 2006). The Court entered an order on December 1, 2006 allowing the withdrawal of counsel for Soil Savers and Johnson. Doc. No. 16 (3:06-CV-0399-N) (N.D. Tex. Dec. 1, 2006). However, neither Soil Savers nor Johnson moved to substitute new counsel. In fact, both Defendants have seemingly ignored the lawsuit and failed to comply with the Court's orders. See e.g., Doc. No. 21 (Plaintiffs' motion to extend deadline to complete joint status conference because Defendants refused to respond to telephone calls or written correspondence); Doc. No. 22 (Plaintiffs' status report indicating they could not comply with court's order to submit a joint report because, in part, all attempts to contact Soil Savers and Johnson had gone unanswered).

Five months after its order granting counsel for Soil Savers and Johnson's motion to withdraw, the Court entered a scheduling order setting this case for a jury trial on April 21, 2008 at 9:00 A.M. Doc. No. 30 (3:06-CV-0399-N) (N.D. Tex. May 11, 2007). Although Plaintiffs filed various pleadings throughout 2007, which were properly served on Soil Savers and Johnson, neither Soil Savers nor Johnson filed any responsive pleadings or otherwise defended against this suit. See e.g., Doc. Nos. 21, 22, 24, 29, 51, 52, 53. On March 19, 2008, the Court

---

[1] While Plaintiffs' complaint included "Does 1-7, inclusive" in the caption, "[n]either the Federal Rules of Civil Procedure nor the statutes cited by plaintiffs as the basis for this suit . . . provides any authority for the joining of fictitious defendants." *Taylor v. Federal Home Loan Bank Bd.*, 661 F. Supp. 1341, 1350 (N.D. Tex. 1986).

[2] Larry Johnson is the President and CEO of Soil Savers, Inc. and is also its registered agent. (Ex. 1, 2). As Soil Savers' President and registered agent, Johnson was served with summons and a copy of Plaintiffs' complaint and therefore had knowledge of the claims against Soil Savers. Doc. No. 5 (3:06-CV-0399-N) (N.D. Tex. Mar. 13, 2006). In fact, Johnson initially retained counsel to represent both him and Soil Savers in this litigation. Doc. No. 7 (3:06-CV-0399-N) (N.D. Tex. Mar. 22, 2006).

entered a Trial Scheduling Order that reiterated the case was set for a jury trial[3] on April 21, 2008. Doc. No. 57 (3:06-CV-0399-O) (N.D. Tex. Mar. 19, 2008). On March 25, 2008, the Court entered an Order Setting Pretrial Status Hearing on April 4, 2008, and specifically instructed the Clerk of the Court to mail a copy of this order to Larry Johnson. Doc. No. 65 (3:06-CV-0399-O) (N.D. Tex. Mar. 25, 2008). Neither Johnson nor counsel for Soil Savers appeared at the pretrial status hearing. Doc. No. 77 (3:06-CV-0399-O) (N.D. Tex. Apr. 4, 2008). On April 4, 2008, the Court entered an Order resetting the trial date to April 30, 2008 at 1:30 P.M. Doc. No. 76 (3:06-CV-0399-O) (N.D. Tex. Apr. 4, 2008). The Clerk of the Court was specifically instructed to mail a copy of this order to Johnson. *Id.* A bench trial was held on April 30, 2008.

Despite having full knowledge that trial of this case would occur on April 30, 2008, neither Johnson nor Soil Savers through its counsel, appeared for trial. (Tr. at 3). While Johnson did not appear for trial, he did communicate and confer with Plaintiffs' local counsel prior to trial and agreed in writing to all of the exhibits Plaintiffs sought to introduce at trial. Doc. No. 88 (3:06-CV-0399-O) (N.D. Tex. Apr. 28, 2008). The Court admitted the stipulated exhibits into evidence at the commencement of trial. (Tr. at 5).

Soil Savers also failed to make an appearance at trial. Unlike Johnson who could defend against this civil suit *pro se*, Soil Savers is a Texas corporation that must be represented by a licensed attorney. *See* 28 U.S.C. § 1654; *Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993) ("the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow

---

[3] Although Plaintiffs initially requested a jury trial, they moved to withdraw the jury demand and have the case placed on the nonjury docket. Doc. No. 78 (3:06-CV-0399-O) (N.D. Tex. Apr. 7, 2008). The Court specifically entered an order providing Soil Savers and Johnson an opportunity to file a response to Plaintiff's motion. Doc. No. 79 (3:06-CV-0399-O) (N.D. Tex. Apr. 7, 2008). Neither Defendant filed a response. On April 14, 2008, the Court granted Plaintiffs' motion and ordered that the case proceed to trial before the Court on April 30, 2008. Doc. No. 83 (3:06-CV-0399-O) (N.D. Tex. Apr. 14, 2008).

corporations, partnerships, or associations to appear in federal court otherwise than by licensed counsel"); *see also Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984); *see also K.M.A., Inc. v. Gen. Motors Acceptance Corp.*, 652 F.2d 398, 399 (5th Cir. 1982); *Southwest Express Co., Inc. v. Interstate Commerce Comm'n*, 650 F.2d 53, 56 (5th Cir. 1982). Soil Savers had 16 months from the date its counsel withdrew to retain new counsel and defend against this suit. Yet, Johnson in his capacity as Soil Savers' President and registered agent chose to ignore this suit. (Tr. at 4). Because Soil Savers failed to hire counsel and appear for trial, the Court hereby strikes its defenses to Plaintiffs' claims in their entirety. *Donovan*, 736 F.2d at 1005 (holding district court properly struck the defenses of a corporation who failed to hire counsel).

The Court now makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

# I.
## FINDINGS OF FACT

1. Soil Savers, Inc. ("Soil Savers") is a Texas corporation incorporated on March 30, 2001. (Ex. 1).[4]

2. At all relevant times, Larry Johnson was the President of Soil Savers. (Ex. 2, p. 2).

3. RTJ Enterprises, Inc. ("RTJ") is a Texas corporation incorporated on June 18, 2001. (Ex. 6)

4. No shares have been issued by RTJ from 2001 to present. (Ex. 7, 18:24-19-24).

5. Larry Johnson solely managed and conducted business by and through RTJ. (Ex. 7 at 18-20).

6. Larry Johnson and Bill Rippetoe are the co-founders of Soil Savers. (Ex. 35, pp. 9 and 10).

---

[4] References herein to "Ex. __" refers to the specified exhibit number in the Trial Exhibit Notebooks admitted into evidence at trial. If the particular exhibit is voluminous or the provision cited is not easily identifiable without a pinpoint citation, "Ex. __" will be followed by an identifying description such as the bates number or page number.

7. Only six patents have been issued to William Rippetoe as inventor. (Ex. 9-26).

8. No patents were granted to William Rippetoe from March 30, 2001 to the present, which includes the time frame during which Soil Savers and Fuel FX were in existence. (Tr.[5] at 9-10, 13-14).

9. William Rippetoe has not submitted any patent applications which have been published by the USPTO. (Ex. 16).

10. Soil Savers has not submitted any patent applications which have been published by the USPTO. (Ex. 17).

11. No patents have been issued to Soil Savers by the USPTO. (Ex. 17).

12. None of the six patents issued to William Rippetoe by the USPTO were assigned to Soil Savers. (Ex. 19-24).

13. Soil Savers has never been an assignee of a patent. (Ex. 25).

14. Soil Savers' principals, on behalf of Soil Savers, prepared a promotional booklet that was distributed to prospective investors to induce them to purchase stock in Soil Savers ("Soil Savers Booklet"). This Booklet summarizes Soil Savers' services, business plan, corporate structure and finances. (Ex. 35).

15. The "Company Summary" within the Soil Savers Booklet states that Soil Savers, "has been engaged in the soil and remediation industry using proprietary and innovative technology unique in the environmental business." (Ex. 35, p. 3 at § 2.0).

16. Section 2.2 of the Soil Savers Booklet, under "Company History," states that Soil Savers' primary assets are the patents which are not included at market value, and that the estimated value of the technology is at excess of $200,000,000, and that projections contained in the plan conservatively reflect only the domestic market. (Ex. 35, p. 3 at § 2.2)

17. These statements in Section 2.2 under "Company History" are false representations. Soil Savers owned no patents. No patents have been issued to Soil Savers by the USPTO. Soil Savers has never been an assignee of a patent. (Ex. 17, 19 and 24).

18. The statements representing the patent "technology" was worth in excess of $200,000,000 are false and not based on any actual valuations. (Ex. 7, 168:23 – 169:8).

19. Larry Johnson admitted that valuing the patent technology was like appraising water that he really didn't know what it was worth. *Id.*

---

[5] "Tr." Refers to the trial transcript followed by the page number and line designation, if applicable.

20.  In the Management Profile Section of Soil Savers Booklet Soil Savers represents that Bill Rippetoe has filed over, "eight patent applications on FX technologies in the past year." (Ex. 35, pp 9 and 10 at § 5).

21.  Bill Rippetoe did not file over eight patent applications on FX technologies. (Ex. 9-26).

22.  Section 6.3 of the Soil Savers Booklet has projected profit and loss for the fiscal years 2004, 2005 and 2006 showing net profits in 2004 of $1,021,300, in 2005 of $3,089,800 and in 2006 $5,021,100. This is projected profit after royalties are paid to investors. (Ex. 35, pp. 14-16 at § 6.3).

23.  From June 2001 through September 2005 Soil Savers performed, at best, seven or eight soil remediation contracts. (Ex. 7, 212:14-21).

24.  The financial projections in the Soil Savers booklet were unrealistic and not based on any reliable data. In fact, Soil Savers operated at a loss every year. (Ex. 7, 212:6-10).

25.  In Section 4 under "Market Analysis Summary" the Booklet states that, "we have been very conservative in our soil projections based on the amount of work that is available. Soil Savers has a disruptive technology that should allow it to get all the work at once over the next several years." In addition, the Soil Savers Booklet represents that Soil Savers' process has been used on numerous projects. (Ex. 35, p. 6 "Statement of Technical Capabilities").

26.  Soil Savers also solicited investors through an April 8, 2003 Offering Memo signed by Larry Johnson. (Ex. 36).

27.  In the April 8, 2003 Offering Memo to investors, Larry Johnson represents that Soil Savers was the holder of approximately 18 provisional patents being used by Soil Savers and its affiliated companies, including Fuel FX. (Ex. 36, p. 1).

28.  Larry Johnson represents in the April 8, 2003 Memo that the value of the technology of Soil Savers and its affiliated companies exceeded $68,000,000 with Fuel FX International Technology estimated at $25,000,000, Soil Savers of Florida, Inc. at $25,000,000, Soil Savers of New York at $8,000,000, and FX Technologies at $5,000,000. *Id.*

29.  Larry Johnson's valuation of Soil Savers' stock at $68,000,000 and his valuation of the estimated worth of the affiliated companies are false. There was no patented technology owned, controlled or assigned to Soil Savers or any of its related entities. (Ex. 10-25).

30.  The value Larry Johnson placed on the alleged "technology" as asserted in the April 8, 2008 Memo was not based on any known method for actual valuation. (Ex. 7, 168:23 – 169:8).

31.  In the April 8, 2003 Memo Larry Johnson represents that Soil Savers has 25,000,000 shares and issued 18 provisional patents valued at $50,000,000 and $118,000,000 of value not currently carried on the books. (Ex. 36).

32. Larry Johnson's valuation of the patents is a gross misrepresentation. (Ex. 7, 168:23-169:8).

33. In the April 8, 2003 Memo, Larry Johnson states that Soil Savers of New York, "currently has about $12,000,000 in projects for the next 12-18 months (1,300,000 tons). A fixed space is also targeted for this market 2003-04." (Ex. 36).

34. Larry Johnson's statement that Soil Savers of New York has $12,000,000 in projects (at the time of the April 8, 2003 Offering Memo) is false. According to Larry Johnson, Soil Savers of New York was only active for two or three months. (Ex. 7, 95:6-10).

35. Larry Johnson concludes the April 8, 2003 Memo by noting that, "[t]here is a very limited window of opportunity to purchase up to 10% or 2,500,000 shares of this parent company's stock (SSI) for $1.60 per share. This stock at this price is undervalued and will be available for a short period of time only. This 10% or 2.5M share offering will be tied to a $1.50 per ton soil remediation royalty worldwide which will terminate when the stockholder has received two times their stock investment in SSI." (Ex. 36).

36. The April 8, 2003 Memo concludes that, "any questions to corporate regarding this private sale need to be addressed directly to Larry Johnson" with a typewritten signature of Larry Johnson as President and CEO of Soil Savers. Id.

37. Covenant Capital Partners and Covenant Capital Partners II were organized solely for the purpose of obtaining funds from members of said partnerships to purchase Soil Savers stock and the attendant royalty rights from Johnson. (Tr. at 7:9-20, 11:14-19, and 12:5-11; Ex. 91 and 92).

38. Covenant Capital Partners purchased 972,500 shares of Soil Savers Stock from Larry Johnson for $1,556,000.00. (Tr. at 8:1-3; Ex. 93, 94, 97).

39. Covenant Capital Partners II purchased 500,000 shares of Soil Savers stock from Johnson for $940,000.00. (Tr. at 8:4-6, 18:12-14, and 19:1-9; Ex. 92 and 98).

40. To induce Covenant Capital Partners and Covenant Capital Partners II to purchase Soil Savers stock, Larry Johnson made numerous misrepresentations regarding Soil Savers, its technology, its current business prospects and Soil Savers' financial condition. The misrepresentations were made via the Soil Savers Booklet (Ex. 35) the April 8, 2003 Offering Memo (Ex. 36) and via direct statements made by Larry Johnson and William Rippetoe. (Tr. at 8:7-10:24, 12:21-13: 6, 13:20-19:4; Ex. 35 and 36).

41. The principals of Soil Savers transferred millions of shares of Soil Savers stock to themselves for no consideration. The insiders are listed as "non-cash shareholders." (Ex. 37).

42. Larry Johnson transferred millions of dollars from Soil Savers to himself and his solely managed corporation, RTJ. (Ex. 55, 57, 59 and Summaries of Financial Transactions; Ex. 56, 58 and 60).

43.   Unbeknownst to its investors, in 2004 Soil Savers began negotiations with Zoom Developers USA, LLC, a Delaware corporation and subsidiary of an Indian company for a worldwide exclusive license of Soil Savers technology. (Ex. 50).

44.   Zoom Developers USA, LLC wired over a million dollars to Soil Savers and Soil Savers LLC. Larry Johnson transferred this money to his own personal accounts. (Ex. 51, 52 and 61-90).

45.   Not including the millions of dollars paid by investors directly to Johnson for the purported sale of Johnson's Soil Savers stock, Johnson caused to be transferred to himself and RTJ from Fuel FX, Soil Savers, SSI Holdings, and Soil Savers, LLC a total of $4,201,145.50. (Ex. 51, 52, 55, 57, 59, and Summaries of Financial Transactions; Ex. 56, 58 and 60-90).

## II.
## CONCLUSIONS OF LAW

Plaintiffs introduced evidence at trial to prove specific claims pleaded in their complaint. (Tr. at 19-20).

1.    Plaintiffs pleaded a claim against Soil Savers for violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 based on its sale of securities to Plaintiffs. (Compl. at 23). Section 10(b) makes it unlawful for a person to:

> use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). In relevant part, Rule 10b-5 makes it unlawful for any person, directly or indirectly, to:

> make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

2.    To prove a claim under these provisions, a plaintiff must establish (1) a material misrepresentation or omission or other fraudulent device; (2) purchase or sale of a security in

connection with the fraudulent device; (3) scienter by defendant in making the misrepresentation or omission; (4) materiality of the misrepresentation or omission; (5) justifiable reliance on the fraudulent device by plaintiff (or due diligence against it); and (6) damages resulting from the fraudulent device. *Shivangi v. Dean Witter Reynolds, Inc.,* 825 F.2d 885, 888, n. 6 (5th Cir. 1987).

3.      Plaintiffs have proven each of the necessary elements by a preponderance of the evidence:

   a.   Use of any means or instrumentality of intrastate commerce (Tr. at 21:5-11);
   b.   Scienter (Tr. at 13:20-24; Findings of Fact Nos. 14-36);
   c.   A material misrepresentation (Tr. at 16: 21-25, 17:1-7; Findings of Fact Nos. 7-37); and
   d.   Covenant Capital sustained damage through reliance on the misrepresentation(s)/actual causation and loss causation. (Tr. at 8:7-10:24, 12:21-19:4; Ex. 35, 36); *see also* (Findings of Fact Nos. 1, 2, 6-47).

4.      Plaintiffs are entitled to recover against Soil Savers for its violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in its sale of securities to Plaintiffs.

5.      Plaintiffs pleaded a claim against Larry Johnson for violating Section 10(b) of the Exchange Act and Rule 10b-5 in the sale of securities to Plaintiffs.  (Compl. at 23).  The necessary elements to establish this claim are discussed above.

6.      Plaintiff's evidence establishes, by a preponderance of the evidence, each of the elements necessary to prove their claim against Larry Johnson.:

   a.   Use of any means or instrumentality of intrastate commerce (Tr. at 21:5-11);
   b.   Scienter (Tr. at 13:20-24; Findings of Fact Nos. 14-36);
   c.   A material misrepresentation (Tr. at 16: 21-25, 17:1-7; Findings of Fact Nos. 7-37); and
   d.   Covenant Capital sustained damage through reliance on the misrepresentation(s)/actual causation and loss causation. (Tr. at 8:7-10:24, 12:21-19:4; Ex. 35, 36); *see also* (Findings of Fact Nos.1, 2, and 6-47).

7.     Plaintiffs are entitled to recover against Larry Johnson for violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in the sale of securities to Plaintiffs.

8.     Plaintiffs pleaded a breach of contract claim against Defendants. (Compl. at 24). The elements for breach of contract are: (1) the existence of a contract; (2) the creation of duties under the contract; (3) a breach of a duty by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See e.g., Sport Supply Group, Inc. v. Columbia Cas. Co.,* 335 F.3d 453, 465 (5th Cir. 2003). As detailed below, Plaintiff's evidence establishes each of the elements necessary to prove this claim.

   a.     Contract(s) (Ex. 93-96; Tr. at 7:9-25, 8:1-6, 11:3-25 and 12:1-16);
   b.     Breach/Failure of Consideration (Findings of Fact Nos. 22-36, 40, 42; Tr. at 8:20-13:14, and 15:2-17:24); and
   c.     Damages (Ex. 93-100, 162; Tr. at 8:1-6, 11:3-23, 12:17-20, 13:12-14 and 18:9-15).

9.     Plaintiffs are entitled to recover against Soil Savers and Larry Johnson for breach of the Subscription and Investment Agreements entered into with the Plaintiffs for Soil Savers stock, as alleged in the second claim of the Complaint.

10.     By their third claim alleged in the complaint, Plaintiffs seek rescission of their purchases of Soil Savers stock. The facts and evidence supporting the rescission under these theories of relief are set forth at Paragraphs 1, 2, 5, 9 and 10 of the Conclusions of Law.

11.     The Court concludes Plaintiffs are entitled to rescission under the causes of action for violation of Federal Securities Fraud, violation of the Texas Securities Fraud Act and common law fraud. *See* TEX. REV. CIV. STAT. ANN. art. 581-33D.

12.     In the fourth claim of the Complaint, Plaintiffs pleaded fraud. (Compl. at 28). The elements required to prove fraud are (1) that a material misrepresentation was made; (2) that it was false; (3) that when the speaker made it, he knew it was false or made it recklessly, without

any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. *1488, Inc. v. Philsec Inv. Corp.,* 939 F.2d 1281, 1287 (5th Cir. 1991) (citing *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex. 1977)).

13. As detailed below, Plaintiff's evidence establishes each of the elements necessary to prove this claim.

    a.    Material misrepresentation (Findings of Fact Nos. 7-37);

    b.    Which was false (Findings of Fact Nos. 7-37 and 42);

    c.    Which was either known to be false when made or was asserted without knowledge of its truth (Findings of Fact Nos. 2, 6, 19, 23, 25, 28, 30, 31, 33 and 35);

    d.    Which was intended to be acted upon (Findings of Fact Nos. 15, 26, 36, 37, 40 and 45);

    e.    Which was relied upon (Tr. at 8:7-10:24, 12:21-13:6, 13:20-19:4); and

    f.    Which caused injury (Tr. at 8:1-6 and 12:9-24).

14. Soil Savers is therefore liable to Plaintiffs for Fraud and concealment[6] regarding the sale of Soil Savers stock as alleged.

15. Larry Johnson is liable to Plaintiffs for fraud and concealment regarding the sale of Soil Savers stock as alleged in the fourth claim of the Complaint.

16. As detailed below, Plaintiff's evidence establishes each of the elements necessary to prove this claim against Larry Johnson.

    a.    Material misrepresentation (Findings of Fact Nos. 7-37);

    b.    Which was false (Findings of Fact Nos.7-37 and 42);

    c.    Which was either known to be false when made or was asserted without knowledge of its truth (Findings of Fact Nos. 2, 6, 19, 23, 25, 28, 30, 31, 33 and 35);

    d.    Which was intended to be acted upon (Findings of Fact Nos. 15, 26, 36, 37, 40 and 45);

    e.    Which was relied upon (Tr. at 8:7-10:24, 12:21-13:6, 13:20-19:4); and

    f.    Which caused injury (Tr. at 8:1-6 and 12:9-24).

---

[6] *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47-48 (Tex. 1992).

17.    Further, Plaintiffs pleaded a claim for negligent misrepresentation against Defendants.

(Compl. at 29-30).  To prove a claim for negligent misrepresentation , a plaintiff must establish

that

> (1) the defendant made a representation in the course of his business, or in a transaction in which he had a pecuniary interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 318 (5th Cir. 2002).

18.    As detailed below, Plaintiff's evidence establishes each of the elements necessary to

prove this claim.

> a.    Representation was made by Defendant in the course of his business, or in a transaction in which he has a pecuniary interest (Findings of Fact Nos. 1-6, 38, 39, 41, 42, 44, 45);
> b.    Defendant supplied false information for the guidance of others in their business (Findings of Fact Nos.15-36 and 40);
> c.    Defendant did not exercise reasonable care or competence in obtaining or communicating the information (Findings of Fact Nos. 15-36); and
> d.    Plaintiffs suffered pecuniary losses by justifiably relying on the representation. (Tr. at 8:7-10:12, 12:2-14:17, and 15:2-18:14).

19.    Accordingly, Soil Savers is liable to Plaintiffs for negligent misrepresentation regarding

the sale of Soil Savers stock as alleged in the fifth claim of the Complaint.

20.    Larry Johnson is also liable to Plaintiffs for negligent misrepresentation regarding the

sale of Soil Savers stock as alleged in the fifth claim of the Complaint.  As detailed below,

Plaintiffs' evidence establishes each of the elements necessary to prove this claim.

> a.    A representation was made by Defendant in the course of his business, or in a transaction in which he has a pecuniary interest (Findings of Fact Nos. 1-6, 38, 39, 41, 42,44, 45);
> b.    Defendant supplied false information for the guidance of others in their business (Findings of Fact Nos.15-36 and 40);
> c.    Defendant did not exercise reasonable care or competence in obtaining or communicating the information (Findings of Fact Nos. 15-36); and

d.     Plaintiffs suffered pecuniary loss by justifiably relying on the representation. (Tr. at 8:7-10:12, 12:2-14:17, and 15:2-18:14).

21.    Plaintiffs also pleaded violations of the Texas Securities Act against Defendants. (Compl. at 35). Section 33A of the Texas Securities Act, provides, in pertinent part:

> [a] person who offers or sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him.

TEX. REV. CIV. STAT. ANN. art. 581-33A(2).

22.    As detailed below, Plaintiff's evidence establishes each of the elements necessary to prove this claim against Soil Savers.

    a.    Sale of a Security (Ex. 1, 93-98);
    b.    By means of an untrue statement of a material fact or omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they are made not misleading. (Findings of Fact Nos.14-40 and 42, set forth above); and
    c.    Tender of Securities (Tr. at 13:7-11).

23.    Accordingly, Soil Savers is liable to Plaintiffs for violations of the Texas Securities Act as alleged in the eighth claim of the Complaint.

24.    Larry Johnson is also liable to Plaintiffs for violation of the Texas Securities Act because Plaintiff's evidence establishes each of the elements necessary to prove this claim against him.

    a.    Sale of a security (Ex. 1, 93-98);
    b.    By means of an untrue statement of a material fact or omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they are made not misleading (Findings of Fact Nos.14-40 and 42); and
    c.    Tender of securities (Tr. at 13:7-11);

25.    For the foregoing reasons, the Court finds Plaintiffs are entitled to an award of damages in the amount of $2,496,000 for Defendants' violations of Federal Securities Laws, Breach of Contract, Fraud, Negligent Misrepresentation, and Texas Securities Act violations.

26. Plaintiffs are not entitled to recover on their sixth, seventh, and ninth claims alleged in the complaint because they abandoned those claims by not providing evidence in support at trial or submitting any proposed findings of fact and conclusions of law. *Fallon v. Fortis Health*, No. Civ. A. H-04-2904, 2006 WL 148903, at *15 (S.D. Tex. Jan. 18, 2006).

27. Under Texas law, prejudgment interest is recoverable based on a rescission under the Texas Securities Act. TEX. CIV. STAT. ANN. art. 581-33D(1); *Dupier v. Tex. State Bank*, 28 S.W.3d 740, 754 (Tex. App.—Corpus Christi 2000, pet. dismissed by agr.).

28. Generally, "prejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered. Prejudgment interest is computed as simple interest and does not compound." TEX. FIN. CODE ANN. § 304.104.

29. Article 581-33D(1) of the Texas Securities Act allows prejudgment interest at the legal rate from the date the securities were purchased. TEX. CIV. STAT. ANN. art. 581-33D(1).

30. Although, Plaintiffs established at trial that they invested approx. 2.4 million in the purchase of Soil Savers stock (Tr. at 18: 9-14), the date of each stock purchase was not established. The Court will therefore use the date Plaintiffs filed suit, March 3, 2006, as the date to commence the accrual of prejudgment interest.

31. Under Texas law, the "prejudgment interest rate is equal to the post-judgment interest rate applicable at the time of judgment." TEX. FIN. CODE ANN. § 304.103.

32. Under Texas law, the current rate of prejudgment interest on a money judgment is published at http://www.occc.state.tx.us/pages/int_rates/Index.html.

33. Under Texas law, Plaintiffs are entitled to an award of prejudgment interest from March 3, 2006 to the day prior to the date judgment is entered.

34. While, in a diversity case, issues regarding prejudgment interest are governed by state law, the issue of post-judgment on a judgment entered in federal court is governed by federal law. *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 594-95 (5th Cir. 2006).

35. The post-judgment interest rates for judgments rendered by a federal court is governed by 28 U.S.C. §1961. Section 1961 provides, in pertinent part, "interest shall be allowed on any money judgment in a civil case recovered in a district court" and such "interest shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

36. Plaintiffs are entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid. 28 U.S.C. § 1961(b).

37. Plaintiffs are not entitled to any relief other than that which the court has expressly concluded should be awarded to them.

38. A conclusion of law that should be treated as a finding of fact is hereby adopted as such, and a finding of fact that should be treated as a conclusion of law is hereby adopted as such.

### III.
### MOTION FOR ATTORNEY'S FEES AND COSTS

Following trial, Plaintiffs filed a motion to recover an award of reasonable attorneys' fees in the amount of $228,207.35 and costs in the amount of $59,962.80. (Pl. Mot. at 6). For the reasons set forth below, the Court finds that Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. # 97) should be **DENIED** without prejudice to refiling.

## A.    Plaintiffs' Request for Attorney's Fees

Plaintiffs based their request for attorney's fees on the Texas Securities Act and chapter 38 of Texas Civil Practice and Remedies Code. (Pl. Mot. at 1).

### 1. Texas Securities Act

Under the Texas Securities Act, a party entitled to rescission may also be entitled to recover reasonable attorney's fees if the court finds that such recovery would be equitable. TEX. REV. CIV. STAT. ANN. art. 581-33D(7); *Lane Hartman Ltd. v. P.R.O. Missions, Inc.*, No. 3:95-CV-0869-P., 1997 WL 457512, at *9 (N.D. Tex. Aug. 5, 1997).  To determine whether an award of attorney's fees is equitable under the circumstances, the court considers a number of factors, including: the conduct of the parties in making the transaction, the conduct of both parties in the lawsuit, whether the defendant benefitted from the violation, and the fiduciary relationships. *Citizens Ins. Co. of Am. v. Hakim Daccach*, 105 S.W.3d 712,725 (Tex. App.—Austin 2003), *aff'd*, 217 S.W.3d 430, 459-60 (Tex. 2004).  For example, after finding the director of a broker-dealer and wireless holding company guilty of violating the Texas Securities Act, fraudulent inducement, and civil conspiracy – in part due to material misrepresentations and omissions – the court found it equitable under the circumstances to award the opposing party reasonable attorney's fees. *Lane Hartman*, 1997 WL 457512, at *9.

In this case, the Court found Defendants Soil Saver's, Inc. and Larry Johnson violated the Texas Securities Act and found Plaintiffs are entitled to rescission.  The Court also found Defendants are liable for breach of contract, fraud, negligent misrepresentation, and Federal Securities Law violations.  The Court's finding that Plaintiffs were entitled to rescission under the Texas Securities Act is based on the factual findings that Defendants knowingly and intentionally made material misrepresentations and omissions regarding Soil Savers' patented

technology, services performed, value of the company, and actual business conducted. Furthermore, the Court takes into consideration the fiduciary relationship between the parties, as well as the fact that Defendants substantially benefitted from these violations. Based on the foregoing factors, the Court finds that Defendants' conduct, much like the case in *Lane Hartman*, indicates that an award of reasonable attorney's fees is equitable under the circumstances.

## 2. Breach of Contract

Likewise, the Texas Civil Practice and Remedies Code provides that a prevailing party may receive an award of reasonable attorney's fees for recovery under a breach of contract claim. TEX. CIV. PRAC. REM. CODE § 38.001. A party may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001; *Am. Int'l Specialty Lines Ins. Co. v. Res-Care, Inc.*, 2008 U.S. App. LEXIS 11758, at *39 (5th Cir. June 2, 2008). Here, the Court has found that Defendants are liable to Plaintiffs on their breach of contract claim. Because Plaintiffs have prevailed on their breach of contract claim, they are entitled to an award of reasonable attorney's fees. In sum, Plaintiffs' claims for rescission under the Texas Securities Act, and breach of contract provide the basis for their request for reasonable attorney's fees.

## 3. Amount of reasonable attorney's fees

In federal court, a party seeking to recover attorney's fees has the burden of producing adequate documentation of the hours spent in litigating the claims. *League of United Latin Am. Citizens # 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). Specifically, the moving party must detail the hours expended in a manner that is sufficient for the court to confirm the party has met its burden. *La. Power & Light Co. v. Kellstrom*, 50 F.3d

319, 324 (5th Cir. 1995). The Court has discretion to reduce or deny an attorney's fee request that is based on inadequate documentation. *LULAC*, 119 F.3d at 1233; *La. Power & Light Co.*, 50 F.3d at 326.

Here, Plaintiffs have submitted the affidavits of Patrick McCullogh and James Crewse to support the amount of the requested attorney's fees. Mr. McCullogh avers that he spent 156 hours performing various task that are globally described in a list numbered a. through n. (McCullogh Aff. at 2-3). Mr. McCullogh further avers that an associate attorney in his firm expended 628 hours performing various tasks globally described in a list numbered a. through u. (McCullogh Aff. at 4-5). Additionally, Mr. McCullogh verifies that certain paralegals[7] in his firm performed 82 hours of work on this matter that included "coordinating court filings, coordinating business record subpoenas including follow-up communications with financial institutions, ensuring compliance with subpoenas and organizing subpoenaed records, compiling and organizing trial exhibits and assisting in the preparation of trial and exhibit binders." (McCullogh Aff. at 6). Based on these general descriptions, Mr. McCullogh requests reasonable and necessary attorney's fees expended by McCullogh & Associates in the amount of $206,870. (McCullogh Aff. at 6).

Similarly, Mr. Crewse attests in his affidavit that he expended in excess of 94.29 hours in this matter performing various tasks generally described in a list numbered a. through ll. (Crewse Aff. at 2-4). Additionally Mr. Crewse avers that Chris Towbridge, a partner in his firm, expended 3.2 hours in this matter, but there is no description of the work performed by Mr.

---

[7] The Court notes that Plaintiffs cannot recover attorney's fees for clerical tasks performed by paralegals. *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (holding that clerical work performed by a paralegal is not recoverable as attorney's fees).

Towbridge. (Crewse Aff. at 5). Based on these averments, Mr. Crewse requests $21,337.35 in reasonable attorney's fees for the hours spent by his firm in this litigation.[8]

The Court finds that Plaintiffs' documentation of the hours expended on reasonable attorney's fees in this matter is inadequate. Specifically, Plaintiffs have not detailed the number of hours that was expended by each timekeeper on each description of legal services. The Court has no means to confirm whether there are any excessive, unproductive, or redundant hours that should be denied. *See e.g.*, *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002) (holding that plaintiff has the burden to reduce a request for attorney's fees by excessive, unproductive, or redundant hours). This Court has previously noted "[a]ttorneys are not required to 'write a book' to describe in excruciating detail the professional services rendered, however, exceptionally terse descriptions of activities do not satisfy the applicant's burden." *Wright v. Blythe-Nelson*, 2004 WL 2870082, at *5 (N.D. Tex. Dec. 13, 2004) (internal citations omitted). Plaintiffs' counsel have not provided sufficient detail or documentation that satisfies their burden to show the amount of reasonable and necessary attorney's fees expended in this litigation. The Court will exercise its discretion and deny Plaintiffs' motion for attorney's fees without prejudice to allow Plaintiffs an opportunity to submit an amended motion guided by the principles and legal standards discussed in this opinion.

**B.      Plaintiffs' Request for Costs**

Plaintiffs also request costs in the amount of $59,962.80. (Pl. Mot. at 4). Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--

---

[8] The Court notes that the affidavit of Mr. Crewse and Mr. McCullogh also request a prospective award of reasonable attorney's fees in the event that a motion for new trial is filed or that the judgment is appealed. (McCullogh Aff. at 7; Crewse Aff. at 6). Unlike state courts who are allowed to prospectively award attorney's fees, the customary practice in federal court is to deny such request without prejudice to a subsequent application based on fees that were actually incurred. *See e.g. Nat'l Satellite Sports, Inc. v. Garcia*, 2003 WL 21448375, at *3 (N.D. Tex. June 18, 2003).

other than attorney's fees--should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1); *Jones v. White,* 2007 U.S. Dist. LEXIS 61685, at *25-26 (S.D. Tex. Aug. 22, 2007). In fact, there is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. *Cheatham v. Allstate Ins. Co.,* 465 F.3d 578, 586 (5th Cir. 2006). Title 28 U.S.C. § 1920 allows the Court to tax the following as costs:

> (1)   Fees of the clerk and marshal;
> (2)   Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3)   Fees and disbursements for printing and witnesses;
> (4)   Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5)   Docket fees under section 1923 of this title;
> (6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920. A district court may decline to award the costs listed under § 1920 but may not award costs omitted from the list. *Davis Mts. Trans-Pecos Heritage Ass'n v. United States Air Force,* 2003 U.S. Dist. LEXIS 26095, at *6 (N.D. Tex. May 27, 2003) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 442 (1987); *Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 891 (5th Cir. 1993)). Items proposed by a party as costs are carefully scrutinized because federal courts are bound by the limitations set out in § 1920, absent explicit statutory or contractual authorization. *Davis,* 2003 U.S. Dist. LEXIS 26095 at *6 (citing *Crawford,* 482 U.S. at 445; *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 335 (5th Cir. 1995)).

Here, Plaintiffs' motion states that McCullogh & Associates charged $58,432 in costs and Texas counsel charged $1,530.80 in costs for a total requested award of $59,962.80. (Mot. at 4-5). The affidavits submitted by Mr. McCullogh and Mr. Crewse provide that these costs include charges for: round trip airline tickets from San Diego to Dallas, four nights of lodging and rental

car expense when in Dallas, photocopying, document scanning and uploading charges, courier/delivery service charges, facsimile, postage, long-distance telephone, parking, Pacer service, and legal research. (McCullogh Aff. at 7; Crewse Aff. at 6).

Plaintiffs' affidavits do not provide any detail regarding the charges for each particular item. However, this Court has previously held that charges for long distance, courier fees, facsimile charges, legal research, and postage are not recoverable costs under § 1920. *Waggoner v. Trans Union, LLC*, 2003 WL 22838718, at *4 (N.D. Tex. Nov. 24, 2003). Additionally, an attorney's travel expenses cannot be recovered as costs under § 1920. *Commc'ns Workers of Am. v. Ector County Hosp. Dist.*, 241 F. Supp.2d 617, 638 (W.D. Tex. 2002) (citing *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993); *Roche v. City of Normandy*, 566 F. Supp. 37 (E.D. Mo. 1983)). Because Plaintiffs do not provide sufficient documentation regarding the amounts incurred for each of the items listed, it is impossible for the Court to determine the appropriate amount of reductions. Rather than disallow Plaintiffs' request for costs in its entirety, the Court will exercise its discretion and provide Plaintiffs an opportunity to submit a revised bill of costs. *See Auto Wax Co. v. Mark Prods.*, 2002 U.S. Dist. LEXIS 2944, at *8-9 (N.D. Tex. Feb. 22, 2002).

## IV.
## CONCLUSION

In sum, the Court finds in favor of Plaintiffs on the first, second, third, fourth, fifth, and eighth claims set forth in Plaintiffs' Original Complaint. The Court further finds Defendants, Soil Savers, Inc. and Larry T. Johnson, are jointly and severally liable for actual damages in the amount of $2,496,000, plus prejudgment interest and post judgment interest. Further, the Court finds Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. #97) should be and is hereby **DENIED** without prejudice. Plaintiffs are ORDERED to file an amended motion for attorney's

fees and bill of costs within 30 days from the date of this order. Judgment will follow after the Court resolves the issues regarding attorney's fees and costs.

 **SO ORDERED** on this _30th_ day of July, 2008.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**